FILED
COURT OF APPEALS
DIVISION II

2014 NOV 25 AM 11: 20

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44837-8-II |
| Respondent, | |
| v. | |
| ANTHONY R. MILLER, | PUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Anthony Miller appeals his convictions of conspiracy to commit murder and murder in the first degree. During a recess before beginning voir dire, the trial court dismissed a prospective juror who inadvertently had been in the courtroom while the parties and the trial court discussed pre-trial issues. Miller argues that this dismissal violated his public trial right and his right to be present at critical trial stages. We hold that (1) the trial court's pre-voir dire dismissal of the prospective juror during a recess did not implicate Miller's public trial right, and (2) even if dismissal of the prospective juror during a recess violated Miller's right to be present at critical trial stages, the violation was harmless error. Accordingly, we affirm.

## FACTS

The State charged Miller with conspiracy to commit murder in the first degree and murder in the first degree with regard to the death of his ex-girlfriend. His trial started on February 6, 2013.

Before the jury was impaneled for voir dire, the trial court and counsel addressed several preliminary issues in open court, including whether either party had concerns about courtroom security when Miller was not shackled or near a guard during trial. Once the court and parties resolved all preliminary issues, the court recessed. Unknown to counsel or the court, a potential juror – juror 28 – was present in the courtroom for some or all of these proceedings.

Fifteen minutes later, court reconvened and the trial court announced that juror 28 had been dismissed during the recess. The following discussion occurred:

[The Court]: . . . [T]here was an individual who was present apparently in the courtroom here when we began these proceedings who was a prospective juror. And we have - -

[Jury Manager]: That's number 28.

[The Court]: - - because she was present during those proceedings, when she should not have been there, but down with the rest of the jurors, we've gone ahead and excused her. And that's number 28?

[Jury Manager]: Number 28.

[The Court]: All right, thank you. Do the parties have any objection to the Court excusing - - having to excuse juror 28 for being involved?

[The State]: No. And in fact we were advised that that had happened, and counsel and I both agreed and stipulated that that - -

[The Court]: Thank you.

[The State]: She should be excused.

Report of Proceedings at 51-52. At that time, the court reporter noted "Juror #28 was excused off the record for coming into the courtroom before the venire entered." Clerk's Papers at 83.

When the trial court dismissed juror 28, the trial court had not yet sworn in the prospective jurors. In addition, there is no indication in the record that juror 28 or any other juror

2

had completed a case-specific juror questionnaire. Juror 28 had completed only a "juror profile" form that provided responses to general background questions. It appears that juror 28 completed this form before coming to the courthouse.

Following a jury trial, the jury found Miller guilty as charged. Miller appeals his convictions.

## ANALYSIS

### A.   PUBLIC TRIAL RIGHT

Miller argues that the trial court's excusal of juror 28 violated his right to a public trial because (1) our Supreme Court has held that the public trial right applies to "jury selection," and (2) the jury selection process had begun when juror 28 was excused because all the jurors had completed juror questionnaires. Br. of Appellant at 9. We disagree and hold that juror 28's excusal did not implicate Miller's public trial right because our Supreme Court has applied the public trial right only to the voir dire component of jury selection and because the pre-voir dire excusal of a juror who inadvertently sits through pretrial motions is not a proceeding that historically was open to the public.

#### 1.   Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). In general, this right requires that certain proceedings be held in open court unless application of the five-part test set forth in *State v. Bone–Club*, 128 Wn.2d 254, 258–59, 906 P.2d 325 (1995) supports closure of the courtroom. Whether a courtroom

3

closure violated a defendant's right to a public trial is a question of law we review de novo. *Wise*, 176 Wn.2d at 9.[1]

The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." *Sublett*, 176 Wn.2d at 71.

To address whether there was a court closure implicating the public trial right, we employ a two-step process. *State v. Wilson*, 174 Wn. App. 328, 337, 298 P.3d 148 (2013). First, we consider whether the particular proceeding at issue "falls within a category of proceedings that our Supreme Court has already acknowledged implicates a defendant's public trial right." *Wilson*, 174 Wn. App. at 337; *see also Wise*, 176 Wn.2d at 11. Second, if the proceeding at issue does not fall within a specific protected category, we determine whether the proceeding implicates the public trial right using the "experience and logic" test our Supreme Court adopted in *Sublett*. *Wilson*, 174 Wn. App. at 335.

2.    Public Trial Right and Jury Selection

Miller argues that his public trial right was violated because the trial court's excusal of juror 28 occurred during jury selection. Our Supreme Court repeatedly has held that the public

---

[1] Miller did not object to the alleged closure below. However, "a defendant does not waive his right to a public trial by failing to object to a closure at trial." *Wise*, 176 Wn.2d at 15. In addition, the defendant need not show that the violation caused any prejudice. *Wise*, 176 Wn.2d at 15-16. Any violation of a defendant's public trial right "is structural error warranting a new trial." *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012).

trial right applies to "jury selection." *E.g.*, *Wise*, 176 Wn.2d at 11; *State v. Brightman*, 155 Wn.2d 506, 515-17, 122 P.3d 150 (2005). However, in *Wilson* we stated that Supreme Court precedent does not establish that the public trial right applies to the *entire* jury selection process. 174 Wn. App. at 338. Instead, we noted that existing case law applies only to the voir dire component of jury selection – the actual questioning of prospective jurors. *Wilson*, 174 Wn. App. at 338-40 & n.11. We acknowledged that in the public trial right context, our Supreme Court has used the terms "jury selection" and "voir dire" interchangeably.[2] *Wilson*, 174 Wn. App. at 338. But we viewed this interchangeable use as "inadvertent and *not* as evincing the Court's intent to treat these two terms as synonymous for precedential purposes." *Wilson*, 174 Wn. App. at 338-39 (emphasis in original). Therefore, we held that the pre-voir dire excusal of jurors did not fall within a specific category of proceedings that our Supreme Court has recognized as implicating the public trial right. *Wilson*, 174 Wn. App. at 340.

A plurality of our Supreme Court adopted this reasoning in *State v. Slert*, ___ Wn.2d ___, 334 P.3d 1088 (2014). The court disagreed with the defendant's claim that it is well settled that the public trial right applies to the entire jury selection process. *Slert*, 334 P.3d at 1091. Instead, the court quoted the passage in *Wilson* that emphasized that existing case law addressed only the voir dire component of jury selection. *Slert*, 334 P.3d at 1091-92. The court concluded that

---

[2] *See, e.g.*, *Paumier*, 176 Wn.2d at 34-35 (stating " '[t]his presumption of openness extends to *voir dire*,' " and that "individually questioning potential jurors is a courtroom closure requiring a *Bone–Club* analysis" (emphasis added) (quoting *State v. Momah*, 167 Wn.2d 140, 147, 217 P.3d 321(2009)); *Wise*, 176 Wn.2d at 12 n. 4, 288 P.3d 1113 (stating " 'it is well settled that the right to a public trial also extends to *jury selection* ' " (emphasis added) (quoting *Brightman*, 155 Wn.2d at 515)).

cases involving voir dire did not resolve whether the public trial right applies to pre-voir dire juror dismissals, and therefore it applied the experience and logic test to decide the issue. *Slert*, 334 P.3d at 1092.[3]

Here, regardless of when jury selection started, the record clearly establishes that the trial court excused juror 28 before voir dire. And the dismissal was not based on an oral or written questioning of the juror. Based on *Slert* and *Wilson*, we hold that the trial court's dismissal of juror 28 did not occur during voir dire and therefore did not fall within the "category of proceedings that our Supreme Court has already acknowledged implicates a defendant's public trial right." *Wilson*, 174 Wn. App. at 337.

3. Experience and Logic Test

Because the trial court's dismissal of juror 28 does not fall within a specific category that our Supreme Court already has recognized for application of the public trial right, we next must apply the experience and logic test to determine whether the public trial right is implicated. We hold that the pre-voir dire dismissal of a juror who inadvertently sits through pretrial motions does not satisfy the experience prong and therefore does not implicate Miller's public trial right.

---

[3] Justice Gonzalez's lead opinion in *Slert* was only joined by three other justices. 334 P.3d at 1094. However, both Justice Wiggins's concurring opinion and Justice Stephens's dissenting opinion appear to agree that the public trial right automatically attached only to the voir dire portion of jury selection. *Slert*, 334 P.3d at 1094 (Wiggins, J., concurring), 1095 (Stephens, J., dissenting). One disagreement between the lead opinion and the dissent was whether considering juror questionnaires constituted voir dire. *Slert*, 334 P.3d at 1095 (Stephens, J., dissenting).

The experience and logic test requires us to consider (1) whether the process and place of a proceeding historically have been open to the press and general public (experience prong) and (2) whether access to the public plays a significant positive role in the functioning of the proceeding (logic prong). *Sublett*, 176 Wn.2d at 73. If the answer to both prongs is yes, then the defendant's public trial right "attaches" and a trial court must apply the *Bone-Club* factors before closing the proceeding to the public. *Sublett,* 176 Wn.2d at 73.[4]

Neither party has cited any cases, statutes, or any other authority suggesting that pre-voir dire dismissals of jurors who inadvertently sit through pretrial motions historically have been open to the public. Instead, the case law suggests that juror dismissals before the jury is impaneled generally have not been open to the public.

First, Washington courts have held that a court clerk has authority to dismiss prospective jurors from service for certain reasons when the jury pool is first being assembled. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 21-22, 296 P.3d 872 (2013); *State v. Rice*, 120 Wn.2d 549, 559-61, 844 P.2d 416 (1993); *State v. Langford*, 67 Wn. App. 572, 583-84, 837 P.2d 1037 (1992).

---

[4] It is somewhat unclear who bears the burden regarding the experience and logic test. Our Supreme Court has held that a personal restraint petitioner has the burden of satisfying the experience and logic test. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 29, 296 P.3d 872 (2013). The court has not expressly decided whether the same rule applies in a direct appeal, but has suggested that the defendant has the burden. *Slert*, 334 P.3d at 1093 ("Slert has not shown there was a closure under the experience and logic test."); *Sublett*, 176 Wn.2d at 75 (stating in addressing the experience and logic test that "the petitioners have failed to establish that their right to a public trial was violated."). In *Wilson*, we also assumed that the defendant has the burden. 174 Wn. App. at 346-47 (holding that the defendant failed to satisfy both prongs of the test). We need not address this issue because we hold that the experience and logic test is not satisfied regardless of who has the burden of proof.

Because a clerk's work is not necessarily open to the public, these rulings suggest that the public trial right does not apply to this type of dismissal. *See Wilson*, 174 Wn. App. at 344.

Second, in *Wilson*, we applied the experience prong to a bailiff's pre-voir dire dismissal of two jurors because they were ill and concluded that this dismissal did not implicate the public trial right. 174 Wn. App. at 342-46. We focused on RCW 2.36.100(1), which gives the trial court broad discretion to dismiss prospective jurors, and CrR 6.3, which contemplates some excusal of jurors before voir dire. *Wilson*, 174 Wn. App. at 342-43. We held that "administrative" juror dismissals are not proceedings that historically have been open to the public. *Wilson*, 174 Wn. App. at 342-43. As we recognized in *Wilson*, however, administrative dismissals generally involve matters unrelated to a juror's ability to impartially view the defendant and facts of the case.[5] 174 Wn. App. 344. The record here indicates that juror 28 was not dismissed for an "administrative" reason, but due to the trial court's – and both parties' – legitimate concerns about juror 28's ability to impartially try Miller's case. The juror had been "tainted" by inadvertently sitting through pre-trial motions in limine.

Third, a plurality of our Supreme Court in *Slert* held that in-chambers discussions and dismissals for cause based on case-specific jury questionnaires before formal voir dire started did not satisfy the experience prong and therefore did not implicate the public trial right. 334 P.3d at 1093.

---

[5] *See, e.g., Yates*, 177 Wn.2d at 22 (upholding excusals based on factors unrelated to the particular case); *State v. Marsh*, 106 Wn. App. 801, 807, 24 P.3d 1127 (2001) (juror excused due to non-English-speaking status); *Langford*, 67 Wn. App. at 582 (jurors excused automatically if they were health care providers or teachers); *State v. Killen*, 39 Wn. App. 416, 419, 693 P.2d 731 (1985) (jurors excused due to schedule conflicts with trial).

These cases are not directly on point. But they do suggest that juror dismissal before voir dire begins – even for case-specific reasons as in *Slert* – generally do not implicate the public trial right. And Miller has failed to provide any evidence, authority, or argument that pre-voir dire juror dismissals are proceedings that historically have been open to the public. Accordingly, we hold that juror 28's dismissal fails to meet the experience prong of the experience and logic test. *See Sublett*, 176 Wn.2d at 75-77.

Because the trial court's dismissal of juror 28 during a recess before voir dire does not satisfy the experience prong of the experience and logic test, the juror's dismissal did not implicate the public trial right. *Sublett*, 176 Wn.2d at 73. Therefore, we hold that the trial court did not violate Miller's public trial right.

B.      RIGHT TO BE PRESENT

Miller argues that dismissing juror 28 in his absence violated his right to be present because jury selection is a critical trial stage. We hold that even if Miller's right to be present was violated, this violation was harmless error.

"A criminal defendant has a fundamental right to be present at all critical stages of trial." *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). Our Supreme Court has recognized that jury selection is a "critical" stage of trial to which the right to be present attaches. *Irby*, 170 Wn.2d at 883-84. Further, the court stated that the right attached when the work of empanelling the jury begins, which in that case was when the prospective jurors were sworn and completed questionnaires. *Irby*, 170 Wn.2d at 884.

9

But both the federal due process right to be present and Washington's right to appear and defend are subject to constitutional harmless error analysis. *Irby*, 170 Wn.2d at 885. The State has the burden of proving the error was harmless beyond a reasonable doubt. *Irby*, 170 Wn.2d at 886. When the defendant's right to be present is violated in the context of a juror dismissal, the State must prove that the juror had no chance to sit on the defendant's jury. *Irby*, 170 Wn.2d at 886.

Here, we hold that there was no chance that the trial court would have allowed juror 28 to remain on this jury, even if Miller had had been present and objected to juror 28's dismissal. The potential prejudice – to both Miller and the State – inherent in allowing juror 28 to remain on the jury after being present during pre-trial motions was far too great. The fact that the motions were deliberately held outside the prospective jurors' presence shows that the trial court and the parties believed it would prejudice the jurors to hear the information. For this reason, both counsel quickly stipulated that juror 28 should be dismissed. Further, Miller has not made any attempt to explain how juror 28 would have been allowed to remain on his jury under these circumstances.

Accordingly, we hold that the State met its burden of proving harmless error beyond a reasonable doubt. Therefore, we hold that Miller is not entitled to reversal based on any violation of the right to be present.

44837-8-II

We reject Miller's public trial right and right to be present arguments, and affirm his convictions.

_____
MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
MELNICK, J.

11